IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESA POPPINO,

    Plaintiff,

v.                                                                                                     1:16-cv-998-LF

NANCY A. BERRYHILL,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Teresa Poppino's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 23), which was fully briefed on July 3, 2017. *See* Docs. 25, 26, 27. The parties consented to my entering final judgment in this case. Doc. 28. Having meticulously reviewed the entire record and being fully advised in the premises, I find that Ms. Poppino's motion is not well-taken, and I will DENY it.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the

claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Poppino was born in 1956 and completed two years of college. AR 185, 189.[3] She worked as a radio ad copywriter and as a casino dealer. AR 189, 212–13, 217. Ms. Poppino filed an application for disability insurance benefits on December 3, 2012—alleging disability since August 19, 2012 due to diabetes, migraines, rheumatoid arthritis, fibromyalgia, and liver disease. AR 167–68, 188. The Social Security Administration ("SSA") denied her claim initially on May 9, 2013. AR 91–94. The SSA denied her claims on reconsideration on September 19, 2013. AR 100–05. Ms. Poppino requested a hearing before an ALJ. AR 110–11. On April 21, 2015, ALJ Christa Zamora held a hearing. AR 36–67. ALJ Zamora issued her unfavorable decision on June 29, 2015. AR 15–35.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 14-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

The ALJ found that Ms. Poppino met the insured status requirements of the Social Security Act through June 30, 2013. AR 20. At step one, the ALJ found that Ms. Poppino had not engaged in substantial, gainful activity since August 19, 2012, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Poppino suffered from the severe impairments of fibromyalgia and degenerative disc disease. *Id.* The ALJ found that her diabetes mellitus, rheumatoid arthritis, hyperlipidemia, asthma, migraines, esophageal obstruction were nonsevere. *Id.* At step three, the ALJ found that none of Ms. Poppino's impairments, alone or in combination, met or medically equaled a Listing. AR 24. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Poppino's RFC. AR 24–29. The ALJ found Ms. Poppino had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except for the following: the claimant is limited to occasional exposure to extreme cold and vibrations; she can never be exposed to hazards; she can frequently handle and finger; and she can never climb ladders, ropes, and scaffolds." AR 24. At step four, the ALJ concluded that Ms. Poppino was able to perform her past relevant work as an ad copywriter and as a casino dealer, and was therefore not disabled. AR 29.

On September 2, 2015, Ms. Poppino requested review of the ALJ's unfavorable decision by the Appeals Council. AR 12–13. Ms. Poppino submitted additional opinion evidence from one of her treating providers: a medical assessment of ability to do work-related activities (physical and non-physical) signed and dated by Melinda O'Neil, CANP,[4] on September 10, 2015. AR 10–11. On July 8, 2016, the Appeals Council denied the request for review. AR 1–4. The Appeals Council stated that it "considered" Ms. O'Neil's opinions, but found the opinions were about a time after June 30, 2013, her date last insured, and therefore did not affect the

---

[4] Certified Adult Nurse Practitioner.

decision. AR 2. Ms. Poppino timely filed her appeal to this Court on September 7, 2016. Doc. 1.[5]

## IV. Ms. Poppino's Claims

Ms. Poppino raises three arguments for reversing and remanding this case: (1) the Appeals Council committed legal error in determining that the evidence she submitted did not constitute new, material, and chronologically pertinent evidence; (2) the ALJ failed to adequately account for the limitations assessed by treating nurse practitioners Heidi Dillenbeck, FNP-C[6] and Melinda O'Neil, CANP; (3) the ALJ erred in assessing her credibility. For the reasons discussed below, none of these issues merit remand.

## V. Analysis

### A. The Appeals Council did not err in rejecting the additional evidence Ms. Poppino submitted.

Ms. Poppino argues that the Appeals Council erred in finding that the opinions dated September 10, 2015 from Melinda O'Neil, CANP were not temporally relevant. Doc. 23 at 13. She argues that the Appeals Council erred in finding the evidence did not qualify for consideration, and urges the Court to remand on this basis. *Id*. at 12–16. The Commissioner argues that the ALJ already considered Ms. O'Neil's March 2015 opinion about the relevant time period, and that Ms. O'Neil's September 2015 opinion therefore was not "new, material, or chronologically relevant." Doc. 25 at 17. I find that the additional evidence Ms. Poppino submitted to the Appeals Council was not "new." The Appeals Council therefore did not err in rejecting it.

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

[6] Family Nurse Practitioner-Certified.

The Appeals Council will grant review of a case if, *inter alia*, "the claimant submits additional evidence that is new, material, and related to the period on or before the date of the ALJ decision." 20 C.F.R. § 404.970(b) (effective through Jan. 16, 2017)[7]; *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (holding that under 20 C.F.R. § 404.970(b), the Appeals Council must consider evidence submitted with a request for review if it is new, material, and related to the period on or before the date of the ALJ's decision). This means the evidence is:

> 1. Not part of the claim(s) record as of the date of the ALJ decision;
>
> 2. Relevant, *i.e.*, involves or is directly related to issues adjudicated by the ALJ; and
>
> 3. Relates to the period on or before the date of the hearing decision, meaning it is (1) dated before or on the date of the ALJ decision, or (2) post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ.
>
> **NOTE:** The AC does not apply a strict deadline when determining if post-dated evidence relates to the period at issue. There are circumstances when evidence dated after the ALJ decision relates to the period at issue. For example, a statement may relate to the period at issue when it postdates the decision but makes a direct reference to the time period adjudicated by the ALJ. This may be especially important in a claim involving a date last insured (DLI) where a statement from a treating source dated after an ALJ decision specifically addresses the time period before the DLI.

Commissioner's Hearings, Appeals and Litigation Manual ("HALLEX") I-3-3-6(B)(2); *see also Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (affirming that evidence is new if it is not duplicative or cumulative, and is material if there is a reasonable possibility it could change the outcome).

---

[7] After the Appeals Council declined review in this case, this CFR was amended to require claimants to show "good cause" for submitting evidence late. *See* 20 C.F.R. § 404.970(b) (effective Jan. 17, 2017).

6

The Tenth Circuit repeatedly has held that whether evidence is "new, material and chronologically pertinent is a question of law subject to our *de novo* review." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (internal citations and quotation omitted). Thus, the question before the Court; *i.e.,* whether the Appeals Council should have considered the medical source statements in Ms. Poppino's request for review, is a question of law subject to the Court's *de novo* review. *Threet*, 353 F.3d at 1191. Although the Appeals Council rejected the newly submitted evidence on the ground that it was not related to the relevant time period, the Court does not analyze this element. Instead, the Court finds that the evidence was not "new"; therefore, the Appeals Council did not err in rejecting the evidence.

In this case, Ms. Poppino had a date last insured of June 30, 2013. AR 20. The ALJ issued her decision on June 29, 2015. AR 15–35. Ms. Poppino requested review by the Appeals Council, and submitted two additional opinions from her treating nurse practitioner Melinda O'Neil, CANP:

(1) a Medical Assessment of Ability to Do Work-Related Activities (Non-Physical), dated September 10, 2015;
(2) a Medical Assessment of Ability to Do Work-Related Activities (Physical), dated September 10, 2015.

AR 10–11. The Appeals Council did not err in rejecting either of Ms. O'Neil's September, 2015 assessments.

Ms. O'Neil's September 10, 2015 physical assessment is not "new," and the Appeals Council did not err in rejecting it. "Evidence is new within the meaning of 404.970(b) if it is not duplicative or cumulative." *Threet*, 353 F.3d at 1191 (internal citation, bracket and quotation omitted). Ms. O'Neil's September 10, 2015 physical assessment is duplicative of her Medical Assessment of Ability to Do Work Related Physical Activities dated March 24, 2015, AR 439–41, which the ALJ considered. Ms. O'Neil's March 24, 2015 physical assessment stated that Ms.

7

Poppino had the opined limitations "on or before June 30, 2013"—her date last insured. AR 441. In the March 24, 2015 opinion, Ms. O'Neil stated that Ms. Poppino could do occasional handling, fine manipulation (fingering), and reaching with her right hand; and could do occasional handling, no fine manipulation (fingering), and no reaching with her left hand. AR 440. The September 10, 2015 physical assessment form asked Ms. O'Neil to assess whether Ms. Poppino could "do [the] repetitive actions" of handling (gross manipulation) and fingering (fine manipulation). AR 11. Ms. O'Neil marked the "No" check boxes on the form indicating that Ms. Poppino could not do repetitive handling or fingering with either her right or left hand. *Id*. While the forms Ms. O'Neil used for the March 24, 2015 and September 10, 2015 physical assessments phrase the questions about Ms. Poppino's ability to handle and finger differently, the two forms capture the same information. Ms. O'Neil's March 24, 2015 physical assessment expressed her opinion about Ms. Poppino's ability to handle and finger through June 30, 2013— Ms. Poppino's date last insured, which is the relevant time period at issue in this case. In addition, the March 24, 2015 physical assessment is more nuanced, in that it allowed Ms. O'Neil to assess whether Ms. Poppino could handle and finger occasionally, frequently, continuously, or never. AR 440.

Ms. Poppino's argues that Ms. O'Neil opined in her September 10, 2015 physical assessment that she "cannot handle or finger with either hand." Doc. 23 at 15. This is not a fair reading of the assessment, which merely indicates that Ms. Poppino cannot do "repetitive" handling and fingering—not that she could not handle and finger at all. *See* AR 11. The Court finds that Ms. O'Neil's September 10, 2015 physical assessment is not "new," but instead is duplicative and cumulative. The Appeals Council therefore did not err in rejecting it.

Ms. O'Neil's September 10, 2015 non-physical assessment also is not "new," and the Appeals Council did not err in rejecting it. In this opinion, Ms. O'Neil stated that Ms. Poppino had severe pain, which caused sleep disturbances and fatigue, and required her to rest or lie down at regular intervals. AR 10. Ms. O'Neil further opined that Ms. Poppino had the following limitations:

- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule;
- Moderate limitation in ability to maintain regular attendance and be punctual within customary tolerance;
- Moderate limitation in the ability to maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently;
- Moderate limitation in the ability to work in coordination with/or proximity to others without being distracted by them;
- Moderate limitation in the ability to make simple work-related decisions;
- Moderate limitation in the ability to complete a normal workday or workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

AR 10. Ms. Poppino asserts that there are "no other medical opinions in the record concerning [her] non-exertional limitations." Doc. 26 at 2 (emphasis omitted). This is not true. Ms. O'Neil completed a Pain Functional Capacity (RFC) Questionnaire on March 24, 2015, which stated that Ms. Poppino's "moderately severe" pain would "frequently to constantly" interfere with her concentration, persistence, and pace. AR 442–43.[8] Heidi Dillenbeck, FNP-C, on April 6, 2015, also completed a Pain Functional Capacity (RFC) Questionnaire which stated that Ms. Poppino's pain would frequently to constantly interfere with her concentration, persistence, and pace. AR 447–48. Ms. O'Neil's September 10, 2015 non-physical assessment similarly addresses Ms.

---

[8] The ALJ did not specifically discuss Ms. O'Neil's Pain Functional Capacity (RFC) Questionnaire. The ALJ did discuss Ms. Dillenbeck's Pain Functional Capacity (RFC) Questionnaire, and explained her reasons for not crediting the limitations opined therein. *See* AR 27. Ms. Poppino does not argue that the ALJ erred in not discussing Ms. O'Neil's questionnaire. In fact, Ms. Poppino never mentions either Ms. O'Neil's or Ms. Dillenbeck's pain questionnaires, or the limitations in concentration, persistence, or pace noted in either of them.

9

Poppino's limitations in concentration, persistence, and pace due to pain.[9] While Ms. O'Neil's March 24, 2015 opinion did not address Ms. Poppino's limitations in concentration, persistence, and pace in the same level of detail as her September 10, 2015 opinion, it adequately addressed this category of limitations, and the Court finds that the opinions overlap enough so that the September 10, 2015 is "duplicative or cumulative." *Threet*, 353 F.3d at 1191. The Appeals Council therefore did not err in rejecting Ms. O'Neil's September 10, 2015 non-physical assessment.

### B. The ALJ adequately accounted for the opinions of Heidi Dillenbeck, FNP-C, and Melinda O'Neil, CANP.

Ms. Poppino argues that the ALJ failed to adequately address the limitations found by Heidi Dillenbeck, FNP-C, and Melinda O'Neil, CANP, in violation of SSR 06-3p. Doc. 23 at 18. She argues that the ALJ failed to give "adequate reasons" for rejecting their opinions. *Id.* at 19. The Commissioner argues that the ALJ "gave good reasons for discounting the nurses' opinions [by] explaining that the nurses were not acceptable medical sources and highlighting record evidence that contradicted the opinions." Doc. 25 at 10. For the reasons discussed below, I agree with the Commissioner.

Ms. Dillenbeck and Ms. O'Neil are not considered "acceptable medical sources," but are instead considered "other sources" under the regulations. *See* SSR 06-03p (Aug. 9, 2006), 2006 WL 2329939, at *1–*2. Only "acceptable medical sources" can establish the existence of a

---

[9] *See Mental Residual Functional Capacity Assessment*, SSA-4734-F4-SUP, listing the following skills under "Sustained Concentration and Persistence:" the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

medically determinable impairment, give medical opinions, or be considered "treating sources . . . whose opinions may be entitled to controlling weight." *Id*. at *2. However, opinions from "other sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Opinions from "other sources" are weighed using the same factors for weighing opinions from acceptable medical sources. *Id.* at *4–*5; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). These factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939, at *4–*5. "Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." *Id.* at *5. The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

The ALJ evaluated the opinions of Ms. O'Neil and Ms. Dillenbeck on the issues of impairment severity and functional effects, as required by SSR 06-03p:

> In a March 2015 Medical Assessment of Ability to do Work Related Physical Activities, Melinda O'Neil, CANP, opined the claimant could perform a range of sedentary work meaning the following: lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk less than two hours in an

11

eight-hour workday; and sit less than six hours in an eight-hour workday (Exhibit 19F/l). Additionally, she opined the claimant could occasionally balance and crouch, but could never climb, stoop, kneel, and crawl (Exhibit 19F/2). As for manipulative limitations, Ms. O'Neil opined the claimant could occasionally handle, finger, and reach, along with frequently feel with the right hand. The claimant could also occasionally handle and frequently feel with the left hand, but could never reach or finger with her left hand (Exhibit 19F/2). She also opined the claimant must avoid moving machinery, temperature extremes, various fumes, and noise (Exhibit 19F/3). The undersigned accords the opinion partial weight. The opinion, from a non-acceptable medical source, is consistent with the objective findings in the treatment record to support the claimant never being able to climb ladders, rope, and scaffolds. The undersigned finds, however, little support in precluding all other postural functions. The record shows the claimant with normal sensory/motor strength in in her upper and lower extremities (Exhibit 15F/5). Furthermore, the undersigned finds limiting the claimant to frequent handling and fingering is more appropriate, based on the record showing the claimant with normal hand grip and normal sensory/motor strength in in her upper extremities (Exhibit 15F/5; 16F/7). Additionally, the claimant reported decent activities of daily living despite her impairments (Exhibit 9E/4).

In an April 2015 Medical Assessment of Ability to do Work Related Physical Activities, H[e]idi Dillenbeck, FNP[-C], opined the claimant could perform a range of sedentary work meaning the following: lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk less than two hours in an eight-hour workday; and sit less than six hours in an eight hour workday (Exhibit 20F/l). Additionally, she opined the claimant could occasionally never perform any postural maneuvers (Exhibit 20F/2). She also opined the claimant could occasionally handle, finger, feel, and reach with her right hand, but never with the left hand (Exhibit 20F/2). She also opined the claimant must avoid heights, moving machinery, temperature extremes, various fumes, and noise (Exhibit 20F/3). The undersigned accords the opinion little weight from Ms. Dillenbeck, a non-acceptable medical source. The opinion is not entirely consistent with the objective findings in the treatment record. The undersigned finds limiting the claimant to frequent handling and fingering is more appropriate based on the record showing the claimant with normal hand grip (Exhibit 16F 17). In addition, the undersigned finds that while the claimant can never climb ladders, ropes, and scaffolds, the record does not support precluding all other postural functions. The record shows the claimant with normal sensory/motor strength in in her upper and lower extremities (Exhibit l5F/5). Additionally, the claimant reported decent activities of daily living despite her impairments (Exhibit 9E/4).

AR 26–27.

The Court does not find error in the ALJ's assessment of Ms. O'Neil's and Ms. Dillenbeck's opinions. The ALJ gave their opinions less weight in part because they were "non-acceptable medical sources." SSR 06-03p permits this. *See* SSR 06-03p, 2006 WL 2329939, at *5. The ALJ also gave their opinions less weight because their opinions were inconsistent with other evidence of record. *See* SSR 06-03p, 2006 WL 2329939, at *4 (in assessing an "other source opinion, an ALJ should consider "[h]ow consistent the opinion is with other evidence"). The ALJ gave valid reasons for finding Ms. Poppino less limited than Ms. O'Neil and Ms. Dillenbeck thought she was: Ms. Poppino had normal sensory/motor strength in in her upper and lower extremities, normal hand grip, and decent activities of daily living. Although Ms. Poppino attacks each of these reasons offered by the ALJ, the Court is not persuaded that the ALJ erred.

Ms. Poppino first faults the ALJ for discounting Ms. O'Neil's and Ms. Dillenbeck's opinions based on just two pages of treatments records showing normal grip strength. Doc. 23 at 20 (referring to ALJ's reliance on 15F/5 and 16F/7). The Court finds no error here. The ALJ discussed in detail why she did not find Ms. Poppino as limited as she alleged, based on a detailed review of the objective medical findings. *See* AR 26. As part of this discussion, the ALJ stated that "[d]uring a January 2015 examination, the claimant appeared to be in no acute distress. (Exhibit 15F/4). She moved all extremities equally with full range of motion and showed normal motor strength (Exhibit 15F/5)." AR 26. The ALJ referenced these objective medical findings again in explaining why she found Ms. Poppino less limited in her ability to handle and finger, and why she found fewer postural limitations than Ms. O'Neil and Ms. Dillenbeck opined. AR 27. The ALJ found that Ms. O'Neil's and Ms. Dillenbeck's opined limitations in these areas were not consistent with the objective medical evidence.

Ms. Poppino asserts that the ALJ's reliance on two pages of treatment records "hardly exhausts the available treatment records," and she directs the Court to Ms. O'Neil's December 14, 2012 treatment note, AR 293, and Sun Pain Management's November 25, 2014 Review of Symptoms, AR 403. Doc. 23 at 20. These records do not detract from the ALJ's analysis. While "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Granted, an ALJ "must discuss the uncontroverted evidence he [or she] chooses not to rely upon, as well as significantly probative evidence he [or she] rejects." *Id*. However, the evidence Ms. Poppino points to is neither uncontroverted nor significantly probative, and the ALJ's failure to discuss it does not require remand. The first piece of evidence Ms. Poppino points to is the December 14, 2012 notation by Ms. O'Neil that Ms. Poppino's hands were swollen at the joints, and her grips were "weak and painful." AR 293. In her discussion of the objective medical findings, however, the ALJ discussed Ms. Poppino's symptoms from fibromyalgia chronologically. *See* AR 26. The ALJ's reliance on the January 23, 2014 finding of normal hand grip and the January 2015 finding of "full range of motion and . . . normal motor strength" is logical, given that the ALJ discussed how Ms. Poppino's fibromyalgia was well-managed with medications, at least beginning in July 2013. AR 26 (citing Exhibit 12F/3 and 16F/13). The ALJ also noted that Ms. Poppino was diagnosed with rheumatoid arthritis in November of 2012, but by July 2013 her rheumatoid arthritis was in remission. AR 21. Given that Ms. Poppino was suffering from rheumatoid arthritis at the time of Ms. O'Neil's December 14, 2012 assessment of her grip strength, it was logical for the ALJ to rely on the later assessment of Ms. Poppino's grip strength and hand pain.

The second piece of evidence Ms. Poppino points to is her November 25, 2014 report to Sun Pain Management that she was experiencing muscle and joint pain. AR 403. The objective physical exam on that date, however, found that Ms. Poppino had adequate range of motion, no muscle pain, adequate strength, adequate grip, intact sensation, no edema, and no joint pain or swelling in either upper extremity, only stiffness in the hands. AR 404. In addition, the objective physical exam of the lower extremities noted normal strength and sensation, no edema, normal range of motion, no joint pain or swelling on the right, and an "achy pain in the knee" on the left. AR 404. The left knee pain appears to have been triggered by a fall in October 2014. AR 459. The ALJ noted that in December 2014, Ms. Poppino reported that she had been doing home exercises with "good relief of her discomfort." AR 26 (citing AR 458). Thus, neither piece of evidence Ms. Poppino points to is uncontroverted or significantly probative, and the Court will not remand based on the ALJ's failure to specifically discuss either one.

Ms. Poppino next challenges the ALJ's reliance on the fact that Ms. Poppino "reported decent activities of daily living despite her impairments" in finding her less limited that Ms. O'Neil and Ms. Dillenbeck thought she was. Doc. 23 at 20. In her Adult Function Report, Ms. Poppino stated that she goes outside daily, walks, and drives a car. AR 232. She also stated that she shops for one to two hours bi-weekly. *Id.* An ALJ is free to consider a claimant's "[r]eports of daily activities" in determining a claimant's RFC. SSR 96-8p, 1996 WL 374184, at *5. Ms. Poppino does not specifically challenge the activities of daily living the ALJ cited, but instead complains that the ALJ did not adopt her reported postural limitations. *See* Doc. 23 at 20–21. The ALJ, however, gave adequate reasons supported by substantial evidence for rejecting the postural limitations in the opinions of Ms. O'Neil, Ms. Dillenbeck, and in Ms. Poppino's function report, as explained elsewhere in this opinion.

Finally, Ms. Poppino argues that the ALJ failed to adequately address Ms. O'Neil's opinion that she must periodically sit and stand to relieve pain and discomfort. Doc. 23 at 22 (citing AR 439).[10] She states that both Ms. O'Neil and Ms. Dillenbeck found that she could walk for less than two hours in an 8-hour workday, and that the ALJ failed to account for this opined limitation. *Id.* Although the ALJ did not specifically discuss the exertional limitations of Ms. O'Neil and Ms. Dillenbeck, it is clear from the ALJ's opinion that the ALJ found Ms. Poppino less exertionally limited. The ALJ gave "great weight" to the opinion of state agency medical consultant Dr. Mark Werner, who opined that Ms. Poppino could stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday. AR 27–28. The ALJ found that Ms. Poppino had the ability to do a range of light work, which is consistent with Dr. Werner's findings. AR 24. It is clear to the Court that the ALJ declined to adopt the exertional limitations noted by Ms. O'Neil and Ms. Dillenbeck, instead adopting the less restrictive limitations found by Dr. Werner. "In the case of a nonacceptable medical source like [Ms. O'Neil and Ms. Dillenbeck], the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6). "Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards

---

[10] It is unclear from Ms. O'Neil's form whether she indicated that Ms. Poppino needed a sit-stand option, as no box is marked next to that question. AR 439. It is possible that the "Yes" box that goes with the previous question goes with the sit-stand question, and the "No" which was written in goes with the previous question, given that Ms. O'Neil answered the follow up question to the sit-stand question: "If yes, how often?" with the answer of "2 hrs." AR 439. In any case, Ms. Dillenbeck clearly opined that Ms. Poppino required a sit-stand option. AR 444.

have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166.[11]

### C. The ALJ did not err in assessing Ms. Poppino's credibility.

Ms. Poppino argues that the ALJ violated SSR 16-3p by evaluating her character instead of her description of her symptoms. Doc. 23 at 22. She argues that SSR 16-3p—which was effective as of March 28, 2016, and clarified "that subjective symptom evaluation is not an examination of an individual's character"—applies retroactively. *Id*. at 22–23. Ms. Poppino specifically objects to the ALJ's statement that

> [T]he claimant testified she has not used drugs since 2000, yet the record shows she was discharged from pain management care due to cocaine usage in January 2015 (Exhibit l 7F/1). Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

AR 28–29. Ms. Poppino argues that "this segment of ALJ Zamora's decision inappropriately adjudicates [her] disability claim through an impermissible evaluation of [her] character . . . rather than upon an analysis of [her] symptoms," in violation of SSR 16-3p. Doc 23 at 26.

Ms. Poppino's assertion that SSR 16-3p applies retroactively is without merit. On October 25, 2017, the SSA republished SSR 16-3p. *See* SSR 16-3p (Oct. 25, 2017), 2017 WL 5180304. The republished SSR "includes a revision to clarify that our adjudicators will apply SSR 16-3p when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the **rules** that were in effect at the time we issued the decision

---

[11] Ms. Poppino also argues that the limitations suggested by Ms. O'Neil and Ms. Dillenbeck preclude her from performing her past relevant work. But because the ALJ did not adopt the limitations in Ms. O'Neil's and Ms. Dillenbeck's opinions, the ALJ was not required to include these limitations in Ms. Poppino's RFC. *See Qualls v. Apfel*, 206 F.3d 1368, 1372–73 (10th Cir. 2000).

under review." *Id*., 2017 WL 5180304, at *1 (emphasis in original). The Court therefore will apply SSR 96-7p, the SSR governing the evaluation of symptoms that was in effect on June 29, 2015, when the ALJ issued her decision.

> In determining the credibility of a claimant's statements, SSR 96-7p requires the ALJ to
>
>> consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p (July 2, 1996), 1996 WL 374186, at *1. The ALJ complied with these guidelines in assessing Ms. Poppino's credibility. The ALJ discussed Ms. Poppino's reported symptoms. AR 25. The ALJ then discussed in detail how the objective medical findings did not support the degree of limitation Ms. Poppino alleged. AR 26; *see* SSR 96-7p, 1996 WL 374186, at *2 ("[A]n individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record."). The ALJ also discussed the degree of limitation noted in the medical opinions in the record, as well as the third-party function report from Ms. Poppino's husband. AR 26–28. Finally, the ALJ gave valid reasons for finding that Ms. Poppino's testimony regarding her symptoms was inconsistent with her treatment records. AR 28. First, the ALJ noted that Ms. Poppino received little treatment for her impairments during the relevant time period, and did not seek pain management until 2014—which was after her June 2013 date last insured, and at least a year after Ms. O'Neil told Ms. Poppino that she did not provide chronic pain management. AR 28. "Lack of treatment . . . [is a] proper

consideration[] as part of a credibility determination." *Welch v. Colvin*, 566 F. App'x 691, 694 (10th Cir. 2014) (unpublished) (citing *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) and *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010)); *see also* 20 C.F.R. § 404.1529(a) (effective June 13, 2011 to March 26, 2017) (the ALJ will consider "extent to which [claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Second, the ALJ found Ms. Poppino less limited than alleged because the record showed that her medications and physical therapy provided relief for her impairments. AR 28 (citing 12F/3 (noting that Ms. Poppino's fibromyalgia was managed with Cymbalta and hydrocodone); 16F/13 (noting that topiramate works well to control Ms. Poppino's migraines); 23F/1 (noting that home physical therapy provided "good relief of her discomfort"); and the hearing testimony). Under 20 CFR § 404.1529(c)(3) (effective June 13, 2011 to March 26, 2017), the ALJ properly considered "what medications, treatments or other methods" Ms. Poppino used to alleviate her symptoms. *See also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2014) (finding that ALJ reasonably discounted a claimant's subjective complaints based in part on claimant's "admission that medication relieved some of her pain").

Given the numerous valid reasons supported by substantial evidence that the ALJ gave for finding Ms. Poppino less limited that she alleged, the Court will not disturb the ALJ's credibility findings. The ALJ conducted an adequate analysis of Ms. Poppino's credibility. The ALJ did not discredit Ms. Poppino's reported symptoms based on an impermissible reason.

## VI. Conclusion

The Appeals Council did not err in rejecting the new evidence Ms. Poppino submitted, as the evidence was duplicative and cumulative rather than new. The ALJ adequately addressed the
19

"other source" opinions of Ms. Dillenbeck and Ms. O'Neil. Also, the ALJ did not err in assessing Ms. Poppino's credibility.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 23) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent